UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NYLIFE SECURITIES, LLC,<br>           Plaintiff,<br>    v.<br>RON DUHAME, et al.,<br>           Defendants. | Case No. 20-cv-07413-JSC<br><br>**ORDER RE: PRELIMINARY INJUNCTION**<br>Re: Dkt. No. 12 |

Ron Duhame, Uliyan Koytchev Koev, and Kamran Sotoodeh (collectively "Defendants) initiated Financial Industry Regulatory Authority ("FINRA") arbitration against NYLIFE Securities, LLC and its former registered agent Felix Chu. Defendants insist that FINRA Rule 12200 requires NYLIFE to arbitrate Defendants' claims. By this action, NYLIFE seeks to enjoin the FINRA arbitration. While NYLIFE is a national securities broker-dealer and FINRA member, it insists that Rule 12200 does not apply to this dispute. Plaintiff's motion for a preliminary injunction is now pending before the Court.[1] (Dkt. No. 12.) Having considered the parties' briefs and having had the benefit of oral argument on December 3, 2020, the Court GRANTS the motion for preliminary injunction. FINRA Rule 12200 does not require NYLIFE to arbitrate Defendants' claims because Defendants were not a customer of NYLIFE's associated person Felix Chu.

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 9 & 15.)

**BACKGROUND**

On August 17, 2020, Defendants initiated FINRA arbitration proceedings against NYLIFE and its former registered agent Felix Chu. (Complaint at ¶ 11.[2]) In the statement of claim, Defendants contend that they were regular customers of Koev's restaurant, the Little Red Bistro in Pleasant Hill. (*Id*. at ¶ 12.) Felix Chu was also a regular customer at the restaurant and befriended Defendants. (Dkt. Nos. 12-2, 17-1 at ¶ 14 (Statement of Claim and Amended Statement)[3].) Felix repeatedly boasted about his son Derek's successful sports ticket resale business. (Complaint at ¶ 13; Dkt. Nos. 12-2, 17-1 at ¶¶ 14-17.) According to Felix, Derek would purchase tickets for luxury suites in Oracle Arena in Oakland, California and in the Staples Center in Los Angeles, California and resell them for significant profits. (Dkt. Nos. 12-2, 17-1 at ¶ 16.) Felix represented that an investment in Derek's business would "generate annual returns of 15% or more and was a safe investment." (*Id*. at ¶ 17.) Between 2016 and 2018, Defendants invested in a series of promissory notes issued by Derek. (*Id*. at ¶¶ 19-27.) In addition, in July 2017, Koev entered into a joint venture with Derek and his company Suitelife Norcal, LLC. (*Id*. at ¶ 28.) Defendants later discovered that "the promissory note scheme possesses all the traditional indicia of a Ponzi scheme." (*Id*. at ¶ 35.) Defendants claim to have lost $1,215,000 through their investments with Derek Chu. (Complaint at ¶ 16.)

Defendants' FINRA statement of claim contains ten claims against Plaintiff and Felix for among other things breach of fiduciary duty, negligence, fraud, and violation of federal and state securities laws. (Dkt. Nos. 12-2, 17-1 at ¶¶ 68-115.) Defendants contend that Plaintiff is vicariously liable for the acts and omissions of its then employee (Felix). (*Id*. at ¶ 7.) Derek had also been a broker with NYLIFE Securities until 2015 when he was terminated for "engaging in the illicit sale of unapproved outside investments." (*Id*. at ¶¶ 37-38.) He was barred from the securities industry for life later that year. (*Id*. at ¶ 39.) In 2019, NYLIFE also terminated Felix,

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.)
[3] Defendants filed an amended statement of claim August 24, 2020 which reiterates the same statement of facts summarized here. *Compare* Dkt. No. 12-2 *with* Dkt. No. 17-1. The paragraph citations here are the same for both the original and amended statement of claim.

1   and in March 2020 he was barred from the securities industry for life.  (*Id*. at ¶¶ 41-45.)  The
2   statement of claim contends that Felix "recommended the promissory note investments and other
3   investments at issue, and recommended the [Defendants] invest with his son, Derek Chu, without
4   obtaining NYLIFE'S required approval."  (*Id*. at ¶ 53.)   Because the investments were
5   unapproved, "NYLIFE did not conduct any required due diligence on the investments" and they
6   were "unsuitable." (*Id*. at ¶ 54.)  According to the statement of claim, NYLIFE Securities is liable
7   because it had a "legal obligation" to supervise Felix and ensure his compliance with securities
8   laws and because it "fail[ed] to detect and terminate CHU'S illicit conduct, Claimants invested in
9   fraudulent promissory notes and lost their entire investment."  (*Id*. at ¶ 59.)

10          In October 2020, Plaintiff filed this action seeking declaratory and injunctive relief
11  enjoining Defendants from further arbitration proceedings against NYLIFE Securities.  (Dkt. No.
12  1.)  Less than a week after filing this action, Plaintiff filed the now pending motion for preliminary
13  injunction seeking to enjoin the FINRA arbitration proceedings.  (Dkt. No. 12.)  Following
14  submission of Defendants' opposition brief and before the reply brief was filed, Defendants filed
15  an unopposed motion to supplement the exhibits it offered in opposition to the motion proffering a
16  letter from FINRA to Defendants.  (Dkt. No. 19.)  Given Plaintiff's non-opposition, Defendant's
17  motion to supplement is GRANTED.

18                                                      **DISCUSSION**

19          "On a motion for a preliminary injunction, plaintiffs must make a 'threshold showing' of
20  four factors." *E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 844-845 (9th Cir. 2020) (internal
21  citation omitted). "Plaintiffs must show that (1) they are likely to succeed on the merits, (2) they
22  are likely to 'suffer irreparable harm' without relief, (3) the balance of equities tips in their favor,
23  and (4) an injunction is in the public interest[;]" when "the government is a party, these last two
24  factors merge." *Id*. (citing *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008)). Plaintiffs
25  must make a showing on each factor, *see Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127,
26  1135 (9th Cir. 2011). The party seeking an injunction bears the burden of establishing these
27  factors are satisfied.  *See Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). A
28  preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted

United States District Court
Northern District of California

unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (internal quotations and citation omitted).

**A. Likelihood of Success on the Merits**

NYLIFE insists that it is likely to succeed on the merits because FINRA Rule 12200 does not apply to Defendants' claims made in the FINRA arbitration.

"The Financial Industry Regulatory Authority, or FINRA, is a quasi-governmental organization that, among other things, regulates brokerage firms and exchange markets and arbitrates claims against FINRA members that arise out of their securities dealings." *White Pac. Sec., Inc. v. Mattinen*, No. 12-151 YGR, 2012 WL 952232, at *3 (N.D. Cal. Mar. 19, 2012). The rules governing FINRA members provide for arbitration of any dispute, claim or controversy between customers and members or associated persons. *See* FINRA Rules 12100, 12200. "[E]ven if 'there is no direct written agreement to arbitrate ..., the [FINRA] Code serves as a sufficient agreement to arbitrate, binding its members to arbitrate a variety of claims with third-party claimants.'" *O.N. Equity Sales Co. v. Steinke*, 504 F.Supp.2d 913, 916 (C.D. Cal. 2007) (quoting *MONY Secs. Corp. v. Bornstein*, 390 F.3d 1340, 1342 (11th Cir. 2004)).

Under FINRA Rule 12200, parties "must" arbitrate if

- Arbitration under the Code is either:

    (1) Required by a written agreement, or
    (2) Requested by the customer;

- The dispute is between a customer and a member or associated person of a member; and

- The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

FINRA Rule 12200, available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/12200 (last visited Nov. 23, 2020). Defendants insist that arbitration is required because they have a dispute with Felix Chu, they were customers of Felix Chu, and Felix Chu is an associated person of NYLIFE.

Defendants' contention is defeated by *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d

4

1    733 (9th Cir. 2014).  In that case, Goldman Sachs sought to enjoin an arbitration on the grounds
2    that the party initiating arbitration (the City of Reno) was not a Goldman Sachs customer.  The
3    Ninth Circuit first observed that FINRA rules define "customer" as someone who is not a broker
4    or a dealer, and that because Reno is not a broker or a dealer "the FINRA Rules' definition,
5    standing alone, cannot tell us whether Reno fits the bill." *Id.* at 739.  Goldman Sachs argued Reno
6    was not a customer "because their relationship did not relate directly to investment or brokerage
7    services." *Id.*  The Ninth Circuit rejected this "narrow definition" and held instead that "a
8    'customer' is a non-broker and non-dealer who purchases commodities or services from a FINRA
9    member in the course of the member's FINRA-regulated business activities, i.e., the member's
10   investment banking and securities business activities." *Id*. at 739-41.

11   The issue here, then, is whether Defendants purchased commodities or services from
12   NYLIFE's associated person Felix Chu in the course of NYLIFE's FINRA-regulated business
13   activities.  The answer is no.  First, the record does not support a finding that Defendants
14   purchased anything from NYLIFE or Felix Chu, that is, that they were customers of NYLIFE *or*
15   Felix Chu.  Defendants had no relationship whatsoever with NYLIFE and Felix Chu was merely a
16   friend from a local café who recommended a bad investment.  Second, the record does not support
17   a finding that the investments Defendants made in Felix Chu's son's business were part of
18   NYLIFE's FINRA-regulated business activities.  NYLIFE has offered unrebutted evidence that
19   the type of investment made by Defendants is not one NYLIFE offers. Indeed, there is nothing in
20   the record that supports a finding that Felix Chu even made it falsely appear as if the investment
21   had some relationship with NYLIFE. *See Berthel Fisher & Co. Fin. Servs., Inc. v. Frandino*, No.
22   CV-12-02165-PHX-NVW, 2013 WL 2036655, at *5 (D. Ariz. May 14, 2013) ("An investor is
23   most likely a customer of the associated person if the latter acts as a broker, providing advice
24   regarding investments and facilitating the sale of securities to the investor, and if the associated
25   person acted as a representative of the FINRA member").  Thus, NYLIFE has shown that it is
26   likely to succeed on its claim that Rule 12200 does not apply and Defendants have no right to
27   compel NYLIFE to arbitration.
28   Defendants' insistence that *Goldman Sachs* is inapposite is unavailing.  While *Goldman*

*Sachs* involved a dispute with a FINA member rather than a dispute with an associated person of a FINRA member, there is nothing in its reasoning that suggests an investor could be a "customer" for purposes of Rule 12200 even if the investor did not purchase any goods or services from the FINRA member or member's associated person. The cases upon which Defendants rely do not persuade the Court otherwise.  Two of the three Ninth Circuit district court cases were decided before *Goldman Sachs* and, in any event, in all three the court found that the party seeking arbitration was a customer of the member's associated person. *See Chelsea Morgan Sec., Inc. v. Rappaport*, 3 F. Supp. 3d 791, 793 (C.D. Cal. March 13, 2014) ("During the time of the investments at issue here, the Rappaports were customers of Duggins who, in turn, was an associated person of Chelsea"); *White Pac. Sec., Inc. v. Mattinen*, No. 12-151 YGR, 2012 WL 952232, at *1, 4 (N.D. Cal. Mar. 19, 2012) ("there appears to be no dispute that the Mattinens are customers of Ray and can demand arbitration as against him on that basis" as the Mattinens had paid Ray money as he "used their funds for his personal expenses rather than investing them"); *AXA Advisors, LLC v. Lee*, No. 1:15-CV-137-BLW, 2016 WL 335852, at *1, 2 (D. Idaho Jan. 27, 2016) (for purposes of the motion for preliminary injunction the FINA member agreed that "the Lees were the customers of Roberts, an associated person of AXA"; the Lees "lost over a million dollars in investments they made through . . . Roberts").  Defendants, in contrast, were not customers of Felix Chu as they did not purchase any goods or services from him.  *See AXA Advisors*, *LLC*, 2016 WL 335852 at * 3 (noting that Rule 12200 did not apply in *Citgroup Global Markets Inc. v. Abbar,* 761 F.3d 268 (2nd Cir. 2014) because the party initiating arbitration had not purchased anything from the member or member's associated person and the associated person had not received any fees or payments).

      Defendants' out-of-circuit authority is equally inapposite.  In *Waterford Inv. Servs., Inc. v. Bosco*, 682 F.3d 348, 353 (4th Cir. 2012), the parties agreed that the investors were customers of the associated person and the only dispute was whether the agent was the FINRA member's associated person. In Defendants' other cases the question was likewise not whether the investors were customers of the associated person, but whether the customers of an associated member could bring a claim against the FINRA member. *See John Hancock Life Ins. Co. v. Wilson*, 254

F.3d 48, 59 (2d Cir. 2001); *California Fina Grp., Inc. v. Herrin*, 379 F.3d 311, 314 (5th Cir. 2004); *MONY Sec. Corp. v. Bornstein*, 390 F.3d 1340, 1344 (11th Cir. 2004). While each of these cases involved negligent supervision claims, the claims were based on the registered agent having acted as a broker-dealer in the underlying transactions. Not so here.

Finally, at oral argument Defendants contended that *Berthel Fisher*, a case cited by NYLIFE, best supports their arguments that they were Felix Chu's customers. *Berthel Fisher* was decided before *Goldman Sachs* and thus did not apply the Ninth Circuit definition of "customer." But even so, *Berthel Fisher* supports the conclusion that Defendants were not Felix Chu's customers as the court found that the persons initiating arbitration were not the FINRA member's associated person's customer even though they had paid funds to the associated member's solely owned LLC. 2013 WL 20136655 at *8. As NYLIFE explained at oral argument, Defendants' connection to Felix Chu is even more attenuated given that they never paid any money to him or any entity owned by him; that they invested directly with his son does not make them his customers.

As Defendants did not purchase the promissory notes or any other service from NYLIFE's associated person—Felix Chu—and there is no showing that Felix Chu somehow suggested that that there was some relationship between Defendants' investment and NYLIFE, NYLIFE has demonstrated a likelihood of success on the merits of its claim that Defendants were not its customer or the customer of an associated person for purposes of FINRA Rule 12200. Plaintiff has thus met its burden of showing a likelihood of success.

**B. Likelihood of Irreparable Harm**

The Court also finds that NYLIFE will suffer irreparable harm if it is forced to participate in an arbitration where the disputes at issue are not subject to an arbitration agreement. *See Berthel Fisher*, 2013 WL 2036655, at *8 (finding that "Plaintiff's time and resources expended for arbitration cannot be recovered, and "[m]any courts have held that forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes per se irreparable harm.") (internal citation omitted); *see also COR Clearing, LLC v. Ashira Consulting, LLC*, 2016 WL 7638177, at *5 (C.D. Cal. Jan. 13, 2016) (collecting cases finding irreparable harm absent an order staying arbitration

7

under similar circumstances).

**C. Balance of Equities**

The balance of the equities also favors NYLIFE. NYLIFE has demonstrated a strong likelihood of success, but even if the Court's ruling granting the injunction is erroneous, Defendants' ability to arbitrate this dispute will only be delayed, not precluded. *See COR Clearing, LLC v. LoBue*, 2016 WL 9088704, at *4 (C.D. Cal. June 16, 2016) (citing *Monavie, LLC v. Quixtar Inc.*, 741 F. Supp. 2d 1227, 1242 (D. Utah 2009) ("If the [plaintiffs] ultimately prevail on the issue of arbitrability, [defendant] will have lost no "bargained-for contractual rights to arbitration" because it had none. If [defendant] ultimately prevails on that issue, the preliminary injunction will be dissolved, and [defendant] may proceed to exercise those rights.")).

**D. Public Interest**

The Federal Arbitration Act reflects "a liberal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). However, this policy is inapplicable to the question of whether a particular party is bound by an arbitration agreement. *See Comer v. Micor*, 436 F.3d 1098, 1101 n.11 (9th Cir. 2006) ("[The] federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead ordinary contract principles determine who is bound.") (internal citation and quotation marks omitted). "Allowing an arbitration to proceed without an agreement to arbitrate does not serve the public interest." *Berthel Fisher*, 2013 WL 2036655, at *8. Accordingly, the Court concludes that the public interest favors enjoining the arbitration here.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for a preliminary injunction is GRANTED. Defendants are ENJOINED from pursuing the arbitration brought before the Financial Industry Regulatory Authority against NYLIFE Securities.

//
//
//
//

This Order disposes of Docket Nos. 12 and 19.

**IT IS SO ORDERED.**

Dated: December 3, 2020

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge